## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAFEGUARD PROPERTIES MANAGEMENT, LLC, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> WILLIAM ZOLL, a/k/a WILLIAM M. ZOLL, and <br> FREEDOM TRUCKING, INC., ) <br><br> Defendants, ) <br><br> ZOLL REALTY, LLC, and 76 HAVEN STREET LLC, ) <br><br> Reach and Apply Defendants. ) | Case No. 22-cv-11004-DJC |

## MEMORANDUM AND ORDER

CASPER, J.                                                    November 8, 2022

## I.    Introduction

Plaintiff Safeguard Properties Management, LLC ("Safeguard") has filed this lawsuit against Defendants William Zoll ("Zoll"), Freedom Trucking, Inc. ("Freedom Trucking"), Zoll Realty, LLC ("Zoll Realty") and 76 Haven Street LLC (collectively, "Defendants") alleging various state law claims arising from Freedom Trucking's failure to perform work as contracted and failure to pay a judgment obtained by Safeguard against Freedom Trucking.  D. 22. Defendants now move for dismissal, D. 24, after Safeguard moved for attachment of real estate, D. 9, and for preliminary injunctive relief, D. 12. For the reasons stated below, the Court ALLOWS the motion to dismiss IN PART and DENIES it IN PART, D. 24, ALLOWS the motion for attachment IN PART, D. 9, and ALLOWS the motion for preliminary injunction, D. 12.

1

## II.    Standard of Review

### A.    Dismissal for Failure to State a Claim

A defendant may move to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To withstand a Rule 12(b)(6) challenge, the Court must determine if the complaint "plausibly narrate[s] a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing cases).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citations omitted).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. (citation omitted).  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. (citation omitted). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted).

### B.    Attachment

The Federal Rules of Civil Procedure authorizes the court to grant certain prejudgment remedies that are available under the law of the state where the court is located.  Fed. R. Civ. P. 64(a).  One such remedy available in Massachusetts is prejudgment attachment, which "is a process issued by the court before judgment has been rendered, authorizing the seizure of the real and personal property of the defendant to be held as security for any judgment the plaintiff may recover in the action.  Such attachments are governed by Mass. Gen. L[.] c[]. 223, §§ 42–59 and

Mass. R. Civ. P. 4.1." <u>Mullane v. Chambers</u>, 333 F.3d 322, 329 (1st Cir. 2003).

A plaintiff seeking prejudgment attachment must demonstrate (1) a reasonable likelihood of success on the merits and (2) a reasonable likelihood of recovering judgment equal to or greater than the amount of the attachment sought over and above any liability insurance shown by defendant to be available to satisfy judgment.  Mass. R. Civ. P. 4.1(c).  Thus, courts consider whether the moving party is "likely to prevail on the merits and obtain damages in the necessary amount." <u>Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Emergency Med. Servs. Ass'n, Inc.</u>, No. 13-cv-10854-JLT, 2013 WL 3563528, at *3 (D. Mass. July 10, 2013) (citing <u>Aetna Cas. & Sur. Co. v. Rodco Autobody</u>, 138 F.R.D. 328, 332 (D. Mass. 1991)) (internal quotation marks omitted). Sessions of this court have "interpreted the [reasonable likelihood] standard as requiring that [the plaintiff] show that it is more likely than not, based on articulable reasons, that she will prevail on one or more of her claims." <u>LaRock v. Mardis Gras Ent., Inc.</u>, No. 3:20-CV-10083-KAR, 2021 WL 2116260, at *6 (D. Mass. Jan. 25, 2021) (second alteration in original) (citation and internal quotation marks omitted)).

The burden belongs to the moving party, who must support their motion with "one or more affidavits that . . . set forth specific facts sufficient to warrant the required findings and . . . [are based] upon the affiant's own knowledge, information or belief." <u>Lockwood v. Madeiros</u>, No. 4:18-cv-40143-DHH, 2018 WL 4087938, at *4 (D. Mass. Aug. 27, 2018) (quoting Mass. R. Civ. P. 4.1 (c), (h)) (internal quotation marks omitted).

**C.    <u>Preliminary Injunction</u>**

Upon a motion for preliminary injunction, the Court must consider:  "(i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the

parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013) (citation omitted). "Likelihood of success [on the merits] is the main bearing wall of [this] framework." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996) (citing cases); see also Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009) (stating that whether the movant's claim likely will succeed on the merits "normally weighs heaviest in the decisional scales" (citation omitted)). Irreparable harm, on the other hand, is "measured 'on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.'" Gedeon v. City of Springfield, No. 16-cv-30054-MGM, 2017 WL 4212334, at *8 (D. Mass. Feb. 24, 2017) (quoting Braintree Lab'ys, Inc. v. Citigroup Glob. Mkts., Inc., 622 F.3d 36, 42–43 (1st Cir. 2010)).

## III.    Factual and Procedural Background

The Court draws the following facts from the amended complaint, D. 22, the affidavits submitted by Safeguard in support of its motion for attachment, D. 10-1; D. 10-5, and accompanying documents.

### A.    Underlying Arbitration Award and Judgment

Safeguard performs property preservation services to prevent damage to properties in foreclosure or to properties securing loans in default. D. 22 ¶ 9. Upon receiving a work order from clients, Safeguard assigns work to independent contractors on a per order basis. Id.

Under a Master Services Agreement ("MSA"), Safeguard assigned Freedom Trucking as an independent contractor to perform work orders on foreclosed properties in Massachusetts. Id. ¶ 10; see D. 1-1. Zoll, who owns Freedom Trucking, signed the MSA on Freedom Trucking's

behalf.  D. 22 ¶ 3, 11; D. 1-1 at 13.  On multiple occasions, Zoll requested prepayment from Safeguard for work that Freedom Trucking never completed.  D. 22 ¶ 16.  Safeguard made these payments and, after learning the work was not completed, sent requests for reimbursement, which Zoll either refused or ignored.  Id.

On one occasion, Zoll submitted a falsified bid to Safeguard for work it agreed to complete on a property.  Id. ¶ 17; D. 10-1 ¶ 4.  Freedom Trucking was asked to solicit bids from a third party licensed to perform mold remediation services, which Freedom Trucking could not do itself because it lacked the requisite license.  Id.  Rather than hire a licensed specialist, Zoll placed a bid on Freedom Trucking's behalf and attempted to make Safeguard believe the work would be done by a licensed mold specialist, including by submitting the bid on the letterhead of another company.  Id.; D. 10-3.  Freedom Trucking failed to complete the work for which it had submitted the bid, forcing Safeguard to hire other contractors to do the work at a higher fee.  D. 22 ¶ 17; D. 10-1 ¶ 4.  Safeguard later contacted the mold remediation company whose letterhead Zoll had used, which informed Safeguard it had never submitted a bid on the property and, confirmed that the bid Zoll submitted was not from the company.  D. 22 ¶ 17; D. 10-1 ¶ 4.

Safeguard initiated arbitration proceedings against Freedom Trucking and obtained an arbitration award of $123,225.74 by default due to Freedom Trucking's failure to respond.  D. 22 ¶ 13.  In December 2020, Safeguard filed a petition in this district to confirm the arbitration award. Id. ¶ 14; see Safeguard Props., LLC v. Freedom Trucking Co., Inc., No. 20-cv-12243-TSH, D. 1 (D. Mass. Dec. 17, 2020).  After Freedom Trucking again failed to respond, the Court entered judgment in favor of Safeguard, D. 22 ¶ 14; see Safeguard Props., LLC, No. 20-cv-12243-TSH, D. 26, and later issued an execution in favor of Safeguard for $136,377.69, D. 22 ¶ 14; D. 22-1;

<u>Safeguard Props., LLC</u>, No. 20-cv-12243-TSH, D. 31.  To date, Freedom Trucking has refused to pay any part of the judgment.  D. 22 ¶ 15.

###    B.    <u>Freedom Trucking</u>

Zoll is the sole owner of Freedom Trucking.  D. 22 ¶ 3; D. 22-2 at 5.  To discover Freedom Trucking's assets that could satisfy the judgment, Safeguard subpoenaed business records and, on April 7, 2022, took Zoll's deposition.  D. 22 ¶ 19.  While Zoll refused to answer several material questions and failed to produce many of the documents requested, <u>id.</u> ¶ 20; <u>see also</u> D. 31 at 1–3, Safeguard learned the following facts from his deposition.  While once engaged in the business of providing maintenance and clean up services for distressed properties, Freedom Trucking has not engaged in such activities for the last few years.  D. 22-2 at 6.  Freedom Trucking is now engaged in Zoll's "real estate flipping" business.  <u>Id.</u>  Freedom Trucking only receives income from accounts unrelated to Freedom Trucking, including Zoll's personal account, funded by Zoll's "real estate flips."  <u>Id.</u> at 7–9 (explaining that, as a result, "Freedom Trucking right now is nothing more than a shell").  Further, it only receives income sufficient to cover its immediate expenses, such as payroll.  <u>Id.</u> at 12–13.  Thus, Freedom Trucking's employees are paid weekly from Zoll's personal funds and only work for the benefit of Zoll's other businesses.  D. 22 ¶ 21; D. 22-2 at 6–9.  Despite providing these services for the benefit of Zoll and his other businesses, Freedom Trucking receives no benefits or profits from real estate flipping.  D. 22 ¶ 21.  Freedom Trucking has loans with Leader Bank and Citizens Bank, but only makes payments on the Leader Bank loan because Zoll only personally guaranteed that loan.  D. 22 ¶ 21; D. 22-2 at 10.  Freedom Trucking does not send bills to clients; instead, Zoll verbally requests payments and directs payments to Zoll's "other accounts associated with the real estate flipping."  D. 22 ¶ 22 (quoting D. 22-2 at 12–13).  While it owned assets worth hundreds of thousands of dollars in 2019, Freedom Trucking's only current

assets are a couple of trucks that have "deteriorated to the point of disrepair," worth only scrap value. D. 22 ¶ 23; D. 22-2 at 14–15; D. 22-3 at 19. Additionally, Freedom Trucking covers several of Zoll's personal expenses, including gas, insurance, and repairs for his personal vehicle, along with his cellphone. D. 22 ¶ 21; D. 22-2 at 11–12.

C.    **Zoll Realty, 76 Haven Street, and Real Estate Properties**

Freedom Trucking's business is located at 76 Haven Street, Milford, Massachusetts, a building owned by Zoll Realty. D. 22 ¶¶ 2, 25. Zoll owns membership interests in Zoll Realty and 76 Haven Street LLC. Id. ¶ 3; see D. 1-4; D. 1-5. In recent years, Freedom Trucking has not paid regular rent to Zoll Realty. D. 22 ¶ 25; D. 22-2 at 4–5.

Safeguard alleges that Zoll holds a beneficial interest in all properties held by Zoll Realty and 76 Haven Street LLC as evidenced by a series of real estate transactions. D. 22 ¶¶ 31–34. For example, in January 2014, 76 Haven Street LLC sold the property at 98 Bishop Street, Framingham, Massachusetts, to Zoll and his wife, Laura Zoll, for $10.00. Id. ¶ 33; D. 22-6 at 1– 2. Zoll and Laura Zoll sold the property back to 76 Haven Street LLC four months later for $10.00. D. 22 ¶ 33; D. 22-6 at 3–4. In April 2015, 76 Haven Street LLC sold the property at 36 DeForest Road, Newton, Massachusetts, to Zoll Realty for $100.00. D. 22 ¶ 34; D. 22-8 at 1–3. Zoll Realty later sold the property to a third party for $700,000.00. D. 22 ¶ 34; D. 22-8 at 4. In September 2015, 76 Haven Street LLC sold the property at 8 Gould Street, Stoneham, Massachusetts, to Zoll Realty for $100.00. D. 22 ¶ 34; D. 22-7 at 1–2. Zoll Realty later sold the property to a third party for $765,000.00. D. 22 ¶ 34; D. 22-7 at 3–4. In February 2014, 76 Haven Street LLC sold the property at 76 Haven Street, Milford, Massachusetts, to Zoll Realty for $100.00. D. 22-5 at 1–2. Zoll Realty currently owns the property located at 76 Haven Street, Milford, Massachusetts. D. 22 ¶ 4; D. 22-5 at 1–2. 76 Haven Street LLC owns the property located at 98 Bishop Street,

Framingham, Massachusetts, as well as the property located at 30 Elcott Road, Quincy, Massachusetts.  D. 22 ¶ 5; D. 22-5 at 3–4, 6–9.  Zoll and Laura Zoll own the property at 21 Floral Street, Newton, Massachusetts as tenants by the entirety.  D. 22 ¶ 3; D. 22-5 at 3.

Finally, Safeguard alleges Zoll has full control over the properties owned by Zoll Realty and 76 Haven Street LLC, which are used to shield the assets of Zoll and Freedom Trucking.  D. 22 ¶¶ 30, 35–36.

## IV.     Procedural History

Safeguard commenced this action on June 26, 2022, D. 1, and later moved for attachment of real estate, D. 9, and for a preliminary injunction, D. 12.  Defendants have now moved for dismissal of Counts I–VII and IX–XI in the amended complaint, D. 24.  The Court heard the parties on the pending motions and took the matters under advisement.  D. 32.

## V.      Discussion

### A.     <u>Motion to Dismiss</u>

Safeguard's amended complaint asserts the following causes of action:  to collect on and enforce the judgment against Freedom Trucking (Count I); fraud against Zoll (Count II); unfair and deceptive business practices in violation of Mass. Gen. L. c. 93A, § 11 against Zoll (Count III); to reach and apply Zoll's membership interest in 76 Haven Street LLC (Count IV); to reach and apply Zoll's membership interest in Zoll Realty (Count V); for an order charging Zoll's membership interest in 76 Haven Street LLC (Count VI); for an order charging Zoll's membership interest in Zoll Realty (Count VII); Zoll, Freedom Trucking, 76 Haven Street LLC, and Zoll Realty engage in a common enterprise, are all alter egos of each other, and that all of the Defendants are jointly and severally liable to Safeguard in the amount of the judgment (Count VIII); declaratory judgment that the Milford and Quincy properties held by 76 Haven Street LLC are being held in

an implied trust for the benefit of Freedom Trucking and Zoll and that Safeguard is entitled to levy

on that beneficial interest (Count IX); declaratory judgment that the Framingham property held by

Zoll Realty is being held in an implied trust for the benefit of Freedom Trucking and Zoll and that

Safeguard is entitled to levy on that beneficial interest (Count X); and fraudulent transfer against

Zoll (Count XI).  Defendants seek dismissal of all counts, except Count VIII.  See generally D. 24.

        *1.*    *Failure to Comply with Local Rule 7.1*

        Safeguard argues that Defendants' motion to dismiss should be denied in its entirety,

because Defendants failed to comply with Local Rule 7.1, which decrees that "[n]o motion shall

be filed unless counsel certify that they have conferred and have attempted in good faith to resolve

or narrow the issue."  D. Mass. LR. 7.1(a)(2).  "Local Rule 7.1 serves a meaningful dual role:  it

fosters discussion between parties about matters before they come before the court, and it preserves

scarce judicial resources.  Failure on the part of a litigant to comply with the rule not only affects

the other parties, but it impedes the court's process as well."  Martinez v. Hubbard, 172 F. Supp.

3d 378, 385 (D. Mass. 2016).  For failure to comply with this local rule, "[d]ismissal is also

available but is not always appropriate."  Hootstein v. Amherts-Pelham Reg'l Sch. Comm., 361 F.

Supp. 3d 94, 103 (D. Mass. 2019) (citation omitted).  Here, the Court will not impose such

sanction, but advises the parties that failure to comply with L.R. 7.1(a)(2) in connection with a

future motion in this case will likely lead to summary dismissal of that motion.  Presently, however,

the Court declines to deny the motion to dismiss on this basis, Hootstein, 361 F. Supp. 3d at 103,

but turns to the merits of same.

        *2.*    *Count I*

        Defendants move for dismissal of Count I, an action against Freedom Trucking to enforce

the judgment.  Although Safeguard does not address this issue directly, Defendants' brief

paragraph invoking Fed. R. Civ. P. 8 is not a sufficient basis for dismissal.  Freedom Trucking is more than on notice of the claim, as Count I simply seeks to enforce the judgment previously imposed by the Court.  Accordingly, the motion to dismiss Count I is denied.

    3. *Counts II–III*

   The amended complaint also accuses Zoll of fraud (Count II) and unfair and deceptive business practices in violation of Mass. Gen. L. c. 93A, § 11 (Count III).  These counts will be dismissed, as they are both barred by claim preclusion.

   "Federal claim preclusion law applies to determine the preclusive effect to be given a prior federal court judgment" and "bars parties from relitigating claims that could have been made in an earlier suit."  Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010) (citations omitted) (noting that the doctrine bars "not just claims that were actually made").  "Claim preclusion applies if (1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related."  Id. (citing cases).

   These requirements are satisfied here as to Counts II–III, claims asserted against Zool.  The arbitration award obtained by default and judgment confirming same satisfy the final judgment on the merits requirement.  See Herman v. Meiselman, 541 F.3d 59, 62 (1st Cir. 2008) (stating that "[f]inality of the judgment is satisfied by the issuance of a default judgment" (citations omitted)).

   As for whether the causes of action are sufficiently identical, the First Circuit "uses a transactional approach to determine whether the asserted causes of action are sufficiently identical or related for claim preclusion purposes."  Airframe Sys., Inc., 601 F.3d at 15.  "A cause of action in this context includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

Id. (citation and internal quotation marks omitted).  "This inquiry does not turn on the labels the plaintiff attaches to its various claims, but rather boils down to whether the causes of action arise out of a common nucleus of operative facts."  Id. (citation and internal quotation marks omitted).  Such depends upon factors including "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and "whether treating them as a unit conforms to the parties' expectations."  Id. (citation and internal quotation marks omitted).  The facts underlying Counts II–III are exactly the same as those that led to the arbitration award and judgment confirming same—namely, Freedom Trucking's failure to perform services contracted for and Safeguard's resulting losses.

Finally, the parties are sufficiently identical to satisfy the last requirement.  "Claim preclusion does not merely bar a plaintiff from suing the same defendant for the same claims in a different action; under certain circumstances, a defendant not a party to an original action may also use claim preclusion to defeat the later suit."  Id. at 17.  "[P]rivity is a sufficient but not a necessary condition for a new defendant to invoke a claim preclusion defense. . . . [C]laim preclusion applies if the new defendant is closely related to a defendant from the original action—who was not named in the previous law suit, not merely when the two defendants are in privity."  Id. (citations and internal quotation marks omitted).  The parties to the arbitration and prior action were Safeguard and Freedom Trucking.  The fact that Zoll specifically was not bound to arbitrate does not alter this analysis, because "courts have recognized six theories for binding nonsignatories to arbitration agreements [including] . . . veil piercing/alter ego."  Machado v. System4 LLC, 471 Mass. 204, 209–10 (2015) (citations omitted); see Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 7–8 (1st Cir. 1992).  As discussed below, Safeguard has sufficiently alleged Zoll to be Freedom Trucking's alter ego.  Given Safeguard's plausible allegations as to the relationship between Zoll and Freedom

Trucking, Zoll is sufficiently "closely related" to Freedom Trucking for claim preclusion purposes. See, e.g., All. Network, LLC v. Sidley Austin LLP, 43 Misc. 3d 848, 868–70 (N.Y. Sup. Ct. 2014) (explaining that by alleging nonparty company was the alter ego of the defendants, plaintiffs asserted that the company and the defendants were in privity with each other and that since the company was a party to the prior arbitration and the company was in privity with the defendants in the instant action, res judicata barred plaintiff's attempts to bring successive litigation against the defendants for the same claims as those adjudicated in the prior arbitration).

Thus, Counts II–III are barred by claim preclusion and Defendants' motion to dismiss as to those counts is allowed.

### 4.    Count IV–VII

Defendants additionally move for dismissal of Count IV to reach and apply Zoll's membership interest in 76 Haven Street LLC, Count V to reach and apply Zoll's membership interest in Zoll Realty, Count VI for an order charging Zoll's membership interest in 76 Haven Street LLC, and Count VII for an order charging Zoll's membership interest in Zoll Realty.  D. 24 at 6.  The only argument Defendants advance in favor of dismissal is that the judgment Safeguard presently holds is against Freedom Trucking, so if Counts II–III—which are the only counts alleged against Zoll individually—are dismissed, Counts IV–VII must necessarily be dismissed. Id.  This is incorrect for a number of reasons.  First, as Safeguard points out, Defendants have not sought dismissal of Count VIII, alleging that Zoll, Freedom Trucking, 76 Haven Street LLC, and Zoll Realty engage in a common enterprise, are all alter egos of each other, and that all of the Defendants are jointly and severally liable to Safeguard in the amount of the judgment.  D. 28 at 3.  Second, as Safeguard also contends, if Zoll is found personally liable pursuant to alter ego status, there is no reason why Counts IV–VII should be dismissed just because Counts II–III  have

been dismissed.  Id.   The dismissal of Counts IV-VII  turns on whether Safeguard has plausibly alleged Zoll's alter ego status and the requirements for reach and apply.

a)  Zoll's Alter Ego Status

Within the Commonwealth, corporations and their shareholders are ordinarily deemed to be distinct legal entities.  See Berger v. H.P. Hood, Inc., 416 Mass. 652, 657 (1993).  "Under unusual circumstances, however, a court may disregard the separateness of entities, particularly to defeat fraud or remedy an injury."  In re Blast Fitness Grp., LLC, 603 B.R. 219, 245 (Bankr. D. Mass. 2019) (citing Berger, 416 Mass. at 657).  "These efforts are often characterized as veil piercing or establishing alter ego status."  Id.  "The doctrines of veil piercing . . . and alter ego are interrelated and litigants often use the terms interchangeably."  In re Raymond, 529 B.R. 455, 471 (Bankr. D. Mass. 2015) (citing cases).  Piercing the corporate veil and alter ego, however, are distinct concepts and "can be distinguished."  In re Fustolo, 597 B.R. 1, 47 (Bankr. D. Mass. 2019) (citation omitted).  "The former asks a court to hold A vicariously liable for B's debts, while the latter asserts that A and B are the same entity and therefore liability is direct."  Id. (citation and internal quotation marks omitted).  "Although the standards for piercing the corporate veil are articulated most frequently with respect to corporations, . . . the same principles would apply for alter ego liability to attach to members of limited liability companies."  In re Wolverine, Proctor & Schwartz, LLC, 447 B.R. 1, 36 (Bankr. D. Mass. 2011) (citation omitted).

The Supreme Judicial Court articulated two circumstances where departing from the general principle of corporate separateness is appropriate:

> (a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about

the manner and capacity in which the various corporations and their respective representatives are acting.

My Bread Baking Co. v. Cumberland Farms, Inc. ("My Bread"), 353 Mass. 614, 619 (1968).

Relevant factors to this analysis include:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Att'y Gen. v. M.C.K., Inc., 432 Mass. 546, 555 n.19 (2000) (citing, inter alia, Pepsi-Cola Metro.

Bottling Co. v. Checkers, Inc. ("Pepsi-Cola"), 754 F.2d 10, 14–16 (1st Cir. 1985)); see Birbara v.

Locke, 99 F.3d 1233, 1240 (1st Cir. 1996).  "Only in rare instances, in order to prevent gross

inequity, will a Massachusetts court look beyond the corporate form."  Spaneas v. Travelers Indem.

Co., 423 Mass. 352, 354 (1996) (citing My Bread).

With this framework in mind, Safeguard has plausibly alleged Zoll's alter ego status.

While disregarding the corporate form is appropriate only in rare circumstances, the Court is

mindful of the fact that Safeguard has alleged most of the Pepsi-Cola factors apply here.  Zoll is

the sole stockholder, officer, and director of Freedom Trucking.  D. 22 ¶ 3.  Pervasive control is

evident through Zoll's execution of the MSA on Freedom Trucking's behalf and the fact that

Safeguard at all times dealt with Zoll in its dealings with Freedom Trucking.  Id. ¶ 11.  The use of

Freedom Trucking's employees for the benefit of Zoll's other businesses but failure to share the

profits of those other businesses with Freedom Trucking suggests a confused intermingling of

business activity assets or management.  Id. ¶ 21.  Freedom Trucking is also thinly capitalized, as

its only assets are "a couple of trucks" that are "deteriorated to the point of disrepair."  D. 22-2 at

14–15.  Freedom Trucking's failure in recent years to pay any rent to Zoll Realty and the funding

of Freedom Trucking's payroll through Zoll's personal finances evidences a distinct nonobservance of corporate formalities.  Id. at 4–5, 7–8.  Freedom Trucking lacks a corporate record, pays several of Zoll's personal obligations, and prioritizes payments for loans to which Zoll is personally liable.  Id. at 10–13.  It has also been used in promoting fraud, through its submission to Safeguard of a fraudulent proposal for a project to remediate mold.  D. 10-3.  Additionally, Zoll himself has characterized Freedom Trucking as "nothing more than a shell."  D. 22-2 at 9.

This litany of plausibly alleged Pepsi-Cola factors, coupled with the requirement that this Court "constru[e] the well-pleaded facts of the complaint in the light most favorable to" Safeguard, are sufficient to defeat a Rule 12(b)(6) challenge.  Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011) (citing Fed. R. Civ. P. 12(b)(6)).

> b)   Reach and Apply

Safeguard seeks to reach and apply Zoll's membership interest in 76 Haven Street, LLC and Zoll Realty through statutory reach and apply under Mass. Gen. L. c. 214, § 3(6).  D. 22 ¶¶ 52–61.

The Supreme Judicial Court has articulated the requirements for an action to reach and apply pursuant to Mass. Gen. L. c. 214, § 3(6):

> [A] two-step proceeding wherein the plaintiff, in the first step, must show the existence of a debt owed the company by . . . the principal defendant.  . . .  The second step involves the process of satisfying the debt out of property held by one who owes a debt to the principal defendant.  . . .  The plaintiff must show that this property, by its nature, is incapable of attachment or of taking on execution in a legal action.  . . .  Furthermore, the holder of this property must be joined as a party defendant in an action to reach and apply, given his interest in the issue of his indebtedness to the principal defendant and in the disposition of the property in his possession.

Mass. Elec. Co. v. Athol One, Inc., 391 Mass. 685, 687–88 (1984) (internal citations omitted). "Additionally, the plaintiff must seek an injunction restraining the debtor or a third party from disposing of property which the plaintiff intends to reach and apply in satisfaction of its claim." In re Osgood, 203 B.R. 865, 869 (Bankr. D. Mass. 1997) (citing cases).

Each of these elements is satisfied here. The judgment, which Safeguard currently possesses against Freedom Trucking, is sufficient to show the existence of a debt. De Prins v. Michaeles, 236 F. Supp. 3d 482, 490 (D. Mass. 2017). An interest in an LLC is property that can be reached by a plaintiff in satisfaction of a defendant's debt. See, e.g., Ostrow v. Prime Sols., Inc., No. 14-cv-40114-TSH, 2014 WL 12597620, at *1 (D. Mass. Oct. 15, 2014) (applying Mass. Gen. L. c. 214, § 3(6) to an interest in an LLC and noting that an interest in an LLC "cannot be taken on execution, attached, or reached by any other means besides an action to reach-and-apply"). Furthermore, Safeguard has named the LLCs as reach-and-apply defendants and sought injunctive relief. See generally D. 12; D. 22. As such, all the requirements for reach and apply have been plausibly alleged under Mass. Gen. L. c. 214, § 3(6)[1] and Counts IV–VII survive dismissal.

---

[1] Alternatively, Safeguard has also plausibly stated same as to non-statutory reach and apply. This "requires three elements, requiring that creditor have secured judgment, unsuccessfully sought to execute on judgment, and 'property which could not be taken on execution at law.'" De Prins, 236 F. Supp. 3d at 488 (quoting Cavadi v. DeYeso, 458 Mass. 615, 628 (2011)). Here, all three requirements have been met; Safeguard secured a judgment, is unable to execute the judgment because Freedom Trucking has insufficient assets, and the property at issue—namely, Zoll's real property and interests in 76 Haven Street, LLC and Zoll Realty—could not be taken at law because Zoll has yet to be found to be Freedom Trucking's alter ego. See id. at 489 (finding the requirements for non-statutory reach and apply satisfied where plaintiff secured a judgment, had been unable to execute the judgment because of the estate's insufficient funds, and the relevant property at issue could not be reached because they were in the name of a trust, not the estate). Accordingly, Safeguard has also plausibly alleged non-statutory reach and apply. Given this conclusion as well as the conclusion of reach and apply under Mass. Gen. L. c. 214, § 3(6), the Court need not reach Safeguard's other alternative basis for reach and apply under Mass. Gen. L. c. 214, § 3(7).

5.      *Counts IX–X*

In their motion to dismiss, Defendants also seek dismissal of Counts IX–X, seeking declaratory judgements, pursuant to Mass. Gen L. c. 223, § 67, stating that the Milford and Quincy properties held by 76 Haven Street LLC and the Framingham property held by Zoll Realty, respectively, are being held in an implied trust for the benefit of Freedom Trucking and Zoll and that Safeguard is entitled to levy on those beneficial interests.   However, Defendants offer no argument in support of same.  See generally D. 24.  Defendants have, therefore, waived the issue, and dismissal of Counts IX–X is not warranted.  See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (noting that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" and that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones" (citing cases)).

6.      *Count XI*

Finally, Defendants seek dismissal of Safeguard's Count XI, which accuses Zoll of fraudulently transferring the Framingham property in 2014 to 76 Haven Street LLC for inadequate consideration.  D. 24 at 7–8.  Pursuant to Mass. Gen. L. c. 109A, § 5, Safeguard argues it has a right to bring this claim as Zoll's future creditor.  D. 22 ¶ 79.

Future creditors may bring a claim of fraudulent transfer under at least one scenario that applies here.  That scenario is governed by Mass. Gen. L. c. 109A, § 5(a)(1), which allows a creditor to bring such a claim if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor."  Mass. Gen. L. c. 109A, § 5(a)(1).  Claims brought under this subsection must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably

17

have been discovered by the claimant." Id. § 10(a).  Defendants argue that dismissal is proper because Safeguard brought this suit in 2022 and the transfer occurred in 2014, thus falling outside of the statute of the limitations.  D. 24 at 7.  Safeguard counters that it brought the claim within one year of when the transfer could reasonably have been known to it.  D. 28 at 12–13.  In support, it highlights that Zoll's deposition occurred only in April 2022 and that is when "[t]he majority of facts relating to Mr. Zoll's personal liability, which are stated in the Amended Complaint and which relate to piercing the corporate veil, were discovered by Safeguard."  Id. at 13.  The Court concludes that Safeguard has the better of the arguments.  Here, the parties entered into the MSA in 2015, D. 24 at 8, so Safeguard would have had no reason to discover any fraudulent transfers made by Zoll before 2015 until Freedom Trucking began failing its contractual obligations and Zoll's alter ego status was established through Zoll's 2022 deposition testimony.  This conclusion is buttressed by the principle that the "reasonableness" of a party's actions in discovering a claim are "usually for the trier-of-fact to resolve."  Kielbasa v. Garland, No. 1877-CV00874-D, 2020 Mass. Super. LEXIS 1371, at *15 (Mass. Super. Dec. 21, 2020) (determining that the question of when the plaintiff could have reasonably discovered their fraudulent transfer claim "involves disputed issues of fact that cannot be resolved at summary judgment because reasonableness is usually for the trier-of-fact to resolve" (citing Riley v. Presnell, 409 Mass. 239, 240 (1991)).

Regardless of whether Safeguard's Mass. Gen. L. c. 109A, § 5(a)(1) claim is timely, Defendants also argue that it should be dismissed because Safeguard has alleged no specific allegations that Zoll made the transfer with the intent to defraud creditors.  D. 24 at 8.  The statute lists various factors courts should consider in determining actual intent.  Mass. Gen. L. c. 109A, § 5(b).  At least two factors—namely, that the transfer was to an insider and was made for inadequate consideration—are plausibly alleged.  Id. § 5(b)(1), (8).  The amended complaint also states that

Zoll became insolvent as a result of the transfer but offers no specific factual allegations of Zoll's finances pre- or post-transfer.  D. 22 ¶ 79.  Furthermore, the complaint does not allege a specific creditor Zoll intended to defraud.  Significantly, however, Zoll has failed to comply with discovery requests, see generally D. 31, including discovery requests regarding his finances and former and current creditors, see, e.g., D. 31-3 at 4 (requesting "[a]ll documents and communications from any creditor of yours to you claiming that you are in default on any obligation to such creditor, and all documents filed by such creditor in any court related to any claims such creditor made against you"); id. at 6 (requesting Zoll's tax returns).  Furthermore, since 1998, Zoll has had over a dozen judgments issued against him and, since 2019, he has been named as a defendant in four other cases in the Middlesex Superior Court.[2]  See generally D. 22-4.  As the Court must "constru[e] the well-pleaded facts of the complaint in the light most favorable to" Safeguard, Ocasio-Hernandez, 640 F.3d at 7 (citing Fed. R. Civ. P. 12(b)(6)), the Court cannot say that Safeguard has failed to plausibly allege a fraudulent transfer in violation of Mass. Gen. L. c. 109A, § 5(a)(1).  See, e.g., In re NESV Ice, LLC, No. 21-cv-11226-CJP, 2022 WL 586136, at *7 (Bankr. D. Mass.  Feb. 25, 2022) (noting that "[t]he [c]omplaint does not allege the identity of any specific creditor of Land East, but contains allegations that are sufficient and can be tested through discovery"); In re Wojtkun, 534 B.R. 435, 456 (Bankr. D. Mass. 2015) (denying motion to dismiss claim of fraudulent transfer where four of the factors outlined Mass. Gen. L. c. 109A, § 5(b) were alleged); Norwood Coop. Bank v. Gibbs, No. 10-cv-11647-JCB, 2012 WL 4094328, at *7–8 (D. Mass.

---

[2] On a motion to dismiss, the Court may take judicial notice of public records, including records from state court litigation.  See, e.g., Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) (noting that "[a] court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss" and "[m]atters of public record ordinarily include documents from prior state court adjudications" (citations and quotations omitted)).

Sept. 13, 2012) (determining that there was an intent to hinder, delay, or defraud where three of the factors outlined Mass. Gen. L. c. 109A, § 5(b) were shown).

Accordingly, Defendants' motion to dismiss as to Count XI is denied.

## B.   Attachment

Because "the central question on the motion for approval of attachment is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount," the Court will look to the merits of the non-dismissed counts.  Anderson Foreign Motors, Inc. v. New Eng. Toyota Distribs., Inc., 475 F. Supp. 973, 978 (D. Mass. 1979).  The Court must also consider whether Defendants have met their burden of proving the availability of liability insurance to satisfy the judgment, which, if shown, would require denial of the motion for attachment.  See Greenbriar Cos. Inc. v. Springfield Terminal Ry., 477 F. Supp. 2d 314, 318 (D. Mass. 2007).

### 1.   Sufficiency of the Attached Affidavits

Before proceeding to the merits, the Court must first determine whether the affidavits accompanying Safeguard's motion for attachment satisfy the demands of Mass. R. Civ. P. 4.1. Under this rule, the movant must "submit affidavits setting forth 'specific facts sufficient to warrant the required findings' based upon the affiant's own information or belief."  Johnson v. Koplovsky, 5 F. Supp. 2d 48, 51 (D. Mass. 1998) (quoting Mass. R. Civ. P. 4.1(c), (h)).  Defendants argue that Safeguard's motion and accompanying papers failed to comply with Mass. R. Civ. P. 4.1.  D. 15 at 4–5.  The Court is unconvinced.  "[T]he purpose of the affidavit requirement is to ensure a certain level of evidentiary proof, so that assets are not seized on the basis of unsworn claims."  BRT Mgmt., LLC, 2022 WL 95926, at *4.  Here, both affidavits are sworn and signed under the pains and penalties of perjury—satisfying the purpose of Rule 4.1.  D. 10-1 at 2; D. 10-5 at 2.  Moreover, Safeguard has alleged specific facts throughout the complaint, based upon Zoll's

own deposition testimony.  See Tunnicliff v. Motel 6, OLP, 178 F.R.D. 8, 10 (D. Mass. 1998) (denying attachment motion where plaintiff "failed to submit supporting affidavits and has not otherwise alleged specific facts showing a reasonable likelihood of recovery in any amount").

Accordingly, the supporting affidavits are sufficient for purposes of Mass. R. Civ. P. 4.1.

### 2.    Count I

Safeguard is certainly likely to succeed on the merits of Count I, because attachment would be post-judgment as to Count I.  In other words, Safeguard has already prevailed on the merits, so there is nothing else it must show to prove its likelihood of success.  See Latorraca v. Taniki Fin. Corp., 393 F. App'x 730, 731–32 (1st Cir. 2010) (expressing "[i]t is not clear what, if anything, must be shown to obtain a post-judgment trustee attachment, since the plaintiff will have already prevailed on the merits of the underlying claim. . . .  Once plaintiff has in fact recovered judgment, it appears that the plaintiff would be able to satisfy the requirement of showing a 'reasonable likelihood' of recovery (internal citation and quotation marks omitted)).

### 3.    Counts IV–VII

The merits of Counts IV–VII turn on whether Safeguard can establish Zoll's alter ego status, and, as discussed *supra*, Safeguard has sufficiently alleged Zoll's alter ego status to survive a motion to dismiss.  On a motion for attachment, however, the burden is higher, see LaRock, 2021 WL 2116260, at *6, and the Court is ever cognizant that it is the exception—not the norm—to disregard the corporate form, In re Blast Fitness Grp., LLC, 603 B.R. at 245 (citing Berger, 416 Mass. at 657).  The Court, nevertheless, is persuaded that Safeguard has met its burden here to warrant attachment. See, e.g., Pepsi-Cola, 754 F.2d at 16 (upholding jury verdict finding individuals liable for a corporation's debt, where the individuals "failed to observe corporate formalities, siphoned funds, kept no records, . . . used [the corporate defendants] for . . . personal

transactions[,] . . . [and] [had a] close and informal relationship with the corporate defendants"); M.C.K., Inc., 432 Mass. at 555–57 (upholding judge's ruling regarding alter ego status, where "the facts demonstrated pervasive control," "confused intermingling of activity and assets," "the existence of a common enterprise," "the siphoning of corporate assets," "thin capitalization," "failure to observe corporate formalities," "and substantial disregard of corporate identities"). Additionally, many of the factors Safeguard alleged—including, Zoll is the sole stockholder of Freedom Trucking, intermingling of business activity or management, thin capitalization, nonobservance of corporate formalities, lack of a corporate record, payment of Zoll's personal obligations, and Zoll's own characterization of Freedom Trucking as "nothing more than a shell"—are supported by Zoll's own deposition testimony, further underscoring the merits of Safeguard's allegations.  As such, Safeguard has demonstrated a reasonable likelihood of success on the merits as to Counts IV–VII.

       *4.*    *Count VIII*

Safeguard alleges Zoll, Freedom Trucking, 76 Haven Street LLC, and Zoll Realty engage in a common enterprise, and are all alter egos of each other (Count VIII).  For the reasons already discussed *supra*, Safeguard has sufficiently shown a reasonable likelihood of success on the merits at least as to whether Zoll is Freedom Trucking's alter ego.  However, the same cannot be said for 76 Haven Street LLC and Zoll Realty on the present record.  While some of the Pepsi-Cola factors are applicable to 76 Haven Street LLC and Zoll Realty, many are not or have not been alleged. For example, although there is clear common ownership and pervasive control as evidenced through the real estate transactions, D. 22 ¶¶ 31–34, there is no evidence in the record to suggest 76 Haven Street LLC or Zoll Realty are thinly capitalized, do not observe corporate formalities, fail to maintain a corporate record, are insolvent, or are being used to promote fraud.  In light of

the fact that "[o]nly in rare instances, in order to prevent gross inequity, will a Massachusetts court look beyond the corporate form," the Court does not, on this record, conclude Zoll is 76 Haven Street LLC's and Zoll Realty's alter ego.  Spaneas, 423 Mass. at 354 (citation omitted).  The Court will, nevertheless, reserve judgment on Safeguard's reasonable likelihood of success on this count as to 76 Haven Street LLC or Zoll Realty until Zoll complies with Safeguard's discovery requests, which, as discussed above, could furnish sufficient facts to establish alter ego status of these entities.  See D. 31-3 at 7–13, 23–28 (requesting production of documents and answers to interrogatories from 76 Haven Street LLC and Zoll Realty).

> 5.     Counts IX–X

In Counts IX–X, Safeguard seeks declaratory judgments, pursuant to Mass. Gen. L. c. 223, § 67, stating that the Milford and Quincy properties held by 76 Haven Street LLC and the Framingham property held by Zoll Realty are being held in an implied trust for the benefit of Freedom Trucking and Zoll and Safeguard is entitled to levy on these beneficial interests.  Right out of the gate, however, Safeguard encounters a major hurdle:  Mass. Gen. L. c. 223, § 67 requires that the relevant property or properties have been conveyed or purchased "with the intent and for the purpose of fraudulently securing the land from attachment by a creditor of such debtor, or with the intent and for the purpose of delaying, defeating or defrauding creditors, or which is held on a trust for the debtor, express or implied, whereby he is entitled to a present conveyance, or which was acquired by the debtor by a deed describing him as trustee."  Mass. Gen. L. c. 223, § 67.  There are no facts in the record suggesting any of these properties were conveyed to evade creditors or is owned by Zoll by way of a deed describing him as trustee.  Safeguard contends that these properties are all being held in an implied trust for Zoll's benefit, but the only fact it cites in support of this argument is that the properties have been transferred at will, with or without sufficient

consideration.  D. 10 at 7.  But Safeguard has pointed to no caselaw suggesting transferring properties with or without sufficient consideration is enough to demonstrate an "implied trust" for purposes of Mass. Gen. L. c. 223, § 67, or any caselaw suggesting that that would satisfy the "more likely than not" burden it must shoulder on a motion for attachment.  LaRock, 2021 WL 2116260, at *6 (citation and internal quotation marks omitted).  The Court, however, will again reserve judgment on Safeguard's likelihood of success as to Counts IX–X until Zoll complies with Safeguard's discovery requests, which could similarly furnish sufficient facts to establish these properties were conveyed to evade creditors.  See D. 31-3 at 4, 19, 24, 27, 30 (requesting production of documents and answers to interrogatories regarding past and current creditors)

### 6.    Count XI

In Count XI, Safeguard alleges Zoll fraudulently transferred the Framingham property to 76 Haven Street LLC in 2014.  As discussed in relation to the Defendants' motion to dismiss, Zoll has failed to comply with discovery requests, including discovery requests regarding his finances and former and current creditors.  See, e.g., D. 31; D. 31-3 at 4, 6.  Such information could further establish a likelihood of success as to Safeguard's fraudulent transfer claim.  Accordingly, the Court will reserve judgment on Safeguard's likelihood of success as to Count XI.

### 7.    Amount of Attachment and Liability Insurance

Besides a reasonable likelihood of success on the merits, a plaintiff seeking pre-judgment attachment must show a reasonable likelihood of recovering judgment equal to or greater than the amount of the attachment sought over and above any liability insurance shown by the defendant. Mass. R. Civ. P. 4.1(c).  Here, Safeguard has "itemized in their motion and affidavit the amounts owed to them[,] [which] [t]he [D]efendants do not challenge."  Greenbriar Cos. Inc., 477 F. Supp. 2d at 318; D. 10 at 8.  Furthermore, nowhere in their submissions to this Court do Defendants

contend "any such liability insurance exists," as is their burden under the law.  Greenbriar Cos. Inc., 477 F. Supp. 2d at 318; Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Shopmen's Loc. Union 501 v. Burtman Iron Works, Inc., 164 F.R.D. 305, 307 (D. Mass. 1995). Accordingly, "[t]here is no excuse not to grant the motion for attachment on the grounds of liability insurance" or likelihood of recovering judgment equal to or greater than the amount of the attachment sought.  Greenbriar Cos. Inc., 477 F. Supp. 2d at 318.

The Court will allow attachment as to Zoll and Freedom Trucking in the amount of $164,238.94, which reflects the judgment received against Freedom Trucking, interest and attorneys' fees and costs.  D. 10 at 8.

## C.   Preliminary Injunction

Safeguard also seeks injunctive relief.  Specifically, it requests that the Court (1) enjoin the Defendants from transferring their Milford, Framingham, Quincy, and Newton properties; (2) require Zoll to pay all income he is entitled to receive from Zoll Realty and 76 Haven Street LLC into the Court or place that income into an escrow account; (3) require the Defendants to pay all rental income from the aforementioned properties into the Court or place that income into an escrow account; and (4) enjoin Zoll from transferring his interests in Zoll Realty and 76 Haven Street LLC.  D. 14 at 1–2.  Safeguard also proposes that any order issued by this Court allow the Defendants to seek by motion to expend funds or make transfers not otherwise permitted and to dissolve the injunction after providing security in a form acceptable to the Court.  Id. at 2.

Injunctive relief turns on (1) the "likelihood of success on the merits of its claims;" (2) "irreparable harm if the injunction is withheld;" (3) "the balance of hardships as between the parties;" and (4) "the effect, if any, that an injunction (or the withholding of one) may have on the public interest."  Corp. Techs., Inc., 731 F.3d at 9 (citation omitted).  As the Court has already

determined a reasonable likelihood of success on the merits of the remaining counts, it turns its attention to the remaining factors.

### 1.   Irreparable Harm

"In most cases . . . irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief."  Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) (citing cases).  Generally speaking, "harm which can be adequately compensated with money damages is not considered to be irreparable."  Fleet Nat. Bank v. Rapid Processing Co., 643 F. Supp. 1065, 1066 (D. Mass. 1986) (citing cases).  Nevertheless, "the story is quite different where there is a strong indication that the defendant may dissipate or conceal assts."  Micro Signal Rsch, Inc. v. Otus, 417 F.3d 28, 31 (1st Cir. 2005) (citing cases).  In other words, irreparable harm can exist given a "[party's] probable fraud" and "his prevarications about repayment."  Id.

In the case at bar, Safeguard has shown a reasonable likelihood that Freedom Trucking and Zoll have engaged in fraud in their transactions with it.  The First Circuit and district courts within the circuit have consistently found irreparable harm exists where the defendant has engaged in intentional acts of misconduct, including fraud.  See, e.g., id.; BRT Mgmt., LLC, 2022 WL 95926, at *3; B2 Opportunity Fund, LLC v. Trabelsi, No. 17-cv-10043-RGS, 2017 WL 1196645, at *2 (D. Mass. Mar. 30, 2017); Westernbank P.R. v. Kachkar, No. 07-cv-1606 (ADC/BJM), 2008 WL 8089778, at *9–10 (D.P.R. July 23, 2008).  Safeguard has further contended that Freedom Trucking and Zoll have abused the corporate form, which sessions of this Court have similarly concluded demonstrates irreparable harm through the risk of dissipation or concealment of assets. See Iantosca v. Benistar Admin Servs., Inc., No. 08-cv-11785-NMG, 2008 U.S. Dist. LEXIS 138028, at *11–12 (D. Mass. Nov. 21, 2008).

Accordingly, Safeguard has sufficiently shown a risk of irreparable harm.

### 2.   Balance of Hardships

Safeguard contends that the balance of hardships tilts in its favor because without injunctive relief it will end up collecting nothing or close to nothing of its judgment and any harms to the Defendants can be mitigated by how this Court fashions its order.  D. 13 at 3–4.  Defendants counter that Safeguard is essentially requesting an asset freeze and that injunctive relief would put the Defendants out of business and harm their employees and "legitimate creditors."  D. 15 at 9–10.  The Court is persuaded that the balance of hardships favors Safeguard.

As an initial matter, Safeguard is itself a legitimate creditor and has not yet been able to collect on its judgment.  S. New Eng. Tel. Co. v. Glob. Naps, Inc., 595 F. Supp. 2d 155, 159 (D. Mass. 2009) (balancing the hardships in favor of the plaintiff because the plaintiff "currently suffers a continuing injury in not being able to recoup the debt owed to it").  Safeguard has also shown that the Defendants may dissipate or conceal their assets to avoid satisfying the judgment, a factor which favors Safeguard in the balancing of hardships.  See Pineda v. Skinner Servs., No. 16-cv-12217-FDS, 2020 WL 1308086, at *2 (D. Mass. Jan. 23, 2020).  Moreover, even if Safeguard were requesting an asset freeze, it appears that it has satisfied the burden necessary for such relief.  See AngioDynamics, Inc. v. Biolitec AG, 711 F.3d 248, 250 (1st Cir. 2013) (noting that "where a creditor has a judgment against a debtor and can make a colorable claim that the debtor's funds have been fraudulently conveyed to other entities, the creditors do have a claimed lien interest to support [a] preliminary injunction freezing assets transferred to the other entities" (alteration in original) (citation and internal quotation marks omitted)).

Finally, any possibility of harm to the Defendants' businesses is not always outcome determinative.  See SEC v. M.A. Lundy Assocs., 362 F. Supp. 226, 233 (D.R.I. 1973) (explaining

that "[w]hile [the fact that defendants' businesses and reputations will be injured by the issuance of a preliminary injunction] is a factor to be recognized, such possibility does not of itself render injunctive relief inappropriate or unjust when there is a reasonable likelihood of recurrent violations by the defendants"); see, e.g., BRT Mgmt., LLC, 2022 WL 95926, at *3 (enjoining both LLC and individual defendants from selling, transferring, conveying, or encumbering their property and assets); Hashem v. D'Angelo, No. 16-cv-12383-IT, 2018 WL 6437081, at *5 (D. Mass. Dec. 6, 2018) (requiring defendants to place funds into an escrow account); Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc., 77 F. Supp. 2d 199, 206 (D. Mass. 1999) (requiring defendant to place funds into an escrow account and enjoining defendant from transferring or otherwise reducing the value of their assets). Furthermore, sessions of this Court that have enjoined defendants from transferring their assets have at times excepted sales, transfers, conveyances, or encumbrances made "in the ordinary course of business, such as payments to sub-contractors, government entities, lenders, employees, and vendors," which this Court will do here as well. BRT Mgmt., LLC, 2022 WL 95926, at *3. Thus, the injunction will enable the Defendants to seek to expend funds or make transfers by motion to this Court. Oyster Techs., LTD v. Env't Devs. Grp., LLC, No. 1:11-cv-11795-JLT, 2011 WL 6213747, at *2 (D. Mass. Dec. 13, 2011). The balance of hardships, therefore, favors injunctive relief.

3.    *Public Interest*

The Court also concludes that the public interest favors injunctive relief. While Safeguard contends the public interest is not implicated in this case, D. 13 at 4, the Defendants contend the potential harm to their employees and creditors implicates the public interest, D. 15 at 10. There is, however, also a public interest in ensuring assets for disbursement to enforceable judgments. See, e.g., S. New Eng. Tel. Co., 595 F. Supp. 2d at 160 (expressing that "the expedient enforcement

of judgments" is in the public interest); <u>Iantosca</u>, 2008 U.S. Dist. LEXIS 138028, at 12 (expressing that "ensuring that assets about to be disbursed to judgment debtors remain available to their creditors is in the public interest"); <u>Francis v. Pulley</u>, No. 06-cv-480-JM, 2007 WL 119156, at *8 (D.N.H. Jan. 10, 2007) (expressing that "the public is always interested in this Court protecting the rights of the litigants to appropriate remedies if those litigants can present legally sufficient evidence that they are entitled to relief"). Accordingly, the issuance of injunctive relief comports with the public interest.

For all of these reasons, the Court allows the motion for preliminary injunction.[3]

## VI.  Conclusion

For the foregoing reasons, the Court ALLOWS the motion to dismiss, D. 24, as to Counts II–III and DENIES the motion to dismiss, D. 24, as to Counts I, IV–VII, and IX–XI; ALLOWS the motion for attachment, D. 9, only as to Freedom Trucking's and Zoll's real property interests; and ALLOWS the motion for preliminary injunction, D. 12.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3] Neither party has raised the issue of security under Fed. R. Civ. P. 65(c). The Court, therefore, has not imposed such requirement here, particularly given the specific circumstance here where Safeguard already has a judgment entered against Freedom Trucking and it is plausibly alleged that Zoll is its alter ego.